# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Kaesemeyer | Civil Action No. 6:17-cv-01520 |
| versus | Unassigned District Judge |
| Legend Mining USA Inc et al | Magistrate Judge Carol B. Whitehurst |

## ORDER

Before the Court is Plaintiff, Daniel Kaesemeyer's, Renewed Motion to Certify Collective in which Plaintiff moves to conditionally certify the FLSA collective action filed by Plaintiff [Rec. Doc. 23] against Defendants, Legend Mining USA, Inc. ("Legend USA") and Legend Mining, Inc., Defendants' Opposition [Rec. Doc. 27] and Plaintiff's Reply [Rec. Doc. 36]. For the following reasons, Plaintiff's Motion for Conditional Certification will be granted in part and denied in part.

## *I. Background*

Plaintiff, a resident of the State of Washington, worked for Legend USA, the American subsidiary of Legend Mining, Inc., at the Weeks Island salt mine in Iberia.[1] The terms and conditions of Plaintiff's employment are set forth in the employment contract ("Contract") as follows:

---

1 Legend USA is the wholly owned United States subsidiary of Legend Mining Inc., the parent company, located in Canada. *R. 27.*

> Remuneration:
>
> An hourly base rate of **US $24.00/hr** will be paid in arrears, on the 10th and 25th of each month. In addition you will receive 100% of set site bonus. You will be eligible for overtime on your base hourly rate after 40 hours worked per week.

*R. 10-2. p. 2* (emphasis in original). Plaintiff signed and returned the Contract on July 13, 2017. *R. 10-2 at p. 6.* Plaintiff worked at the Weeks Island salt mine for 10 days (approximately 132 hours) and left Legend USA's employ on October 17, 2017. *Id., ¶¶ 16, 18.*

Plaintiff alleges he was told that pay dates would be the 10th and 25th of every month. *R. 1, ¶ 17.* Plaintiff alleges he never received a pay check for the 10 days he worked in October, 2017. *Id. at ¶¶ 19-22.* Plaintiff filed this action alleging causes of action under the Fair Labor Standards Act ("FLSA") for nonpayment of wages and miscalculated regular rate, the Louisiana Wage Payment Act, La. R.S. §§ 23:631-632 and breach of contract. *R. 1*. In his Complaint, Plaintiff seeks certification of a collective pursuant to 29 U.S.C. § 216(b) consisting of:

> All employees of Legend Mining Inc., and Legend Mining USA, Inc., within the United States of America, who worked within the three years prior to the filing of this Complaint and were not paid overtime premiums consisting of one and a half times their regular rate under the FLSA.

*R. 1, ¶ 33*. Paragraph 34 states, "plaintiff and the members of the collective have been injured in an amount to be proven at trial." *Id. at ¶ 34*.

## *II. Procedural Background*

Plaintiff initially filed a motion for conditional certification under 29 U.S.C. § 207 of the FLSA in this action on January 17, 2018. Plaintiff contended that Defendants failed to pay him (and similarly situated employees) overtime pursuant to the terms of his employment contract. *R. 10*. On March 26, 2018, the Court denied that motion on the grounds that Plaintiff had failed to establish that the allegedly unlawful overtime calculation reflected a general corporate policy. *R. 18*.

Thereafter, Plaintiff propounded his first set of Requests for Admission and Requests for Production on Defendants. *R. 23-2, Stiegler Aff., ¶ 2*. Defendants provided supplemental responses on May 23, 2018, which included a Legend USA, "Corporate Policy" for the company's "Renumeration[sic][2] Calculation." While Defendants designated the document as "confidential" allegedly pursuant to the parties' Protective Order, *R.20*, Plaintiff filed a motion challenging the designation. *R. 21*. Following *in camera* review of the document, the Court granted Plaintiff's

---

2 The Corporate Policy uses the term "Renumeration Calculation". The Court assumes the word "Renumeration" is a typographical error of the word "Remuneration." The Court will therefore refer to the Policy for "Remuneration Calculation."

motion and held that the "Remuneration Calculation" would not be designated as "confidential."

In his renewed motion, Plaintiff maintains that Defendants calculated his overtime premium based only on the $24 hour base rate, and did not include the $20 per hour site bonus in the time-and-a-half overtime calculation. Plaintiff alleges this is a violation of Section 7 of the FLSA, 29 U.S.C. § 207, which requires that overtime premiums include all compensation within an employee's "regular rate." Plaintiff contends that Legend USA's "Remuneration Calculation" policy as well as Defendants' Responses to Plaintiff's Requests for Admissions, establish that the exclusion of the "site bonus" from overtime calculations is a company-wide policy. While Plaintiff moves the Court to certify a collective action of all employees of Legend Mining USA, Inc., and Legend Mining, Inc., who were subject to similar allegedly unlawful overtime calculations, the Court finds that the evidence in the record is related only to Legend USA. Accordingly, the Court will not consider Legend Mining, Inc. in the conditional certification and will refer to Legend USA as "Defendant."

### *III. Applicable Legal Standard*

The Fair Labor Standards Act ("FLSA") requires covered employers to pay non-exempt employees for hours they have worked in excess of the defined

4

maximum hours. 29 U.S.C. § 207(a). Section 216(b) creates a cause of action for employees against employers violating the overtime compensation requirements. 29 U.S.C. § 216(b). Section 216(b) provides:

> An action ... may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, unlike a class action filed under Federal Rule of Civil Procedure 23(c), a collective action under § 216(b) provides for a procedure to "opt-in," rather than "opt-out." *Roussell v. Brinker Int'l, Inc.*, 441 Fed.Appx. 222, 225 (5th Cir.2011) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir.2008)). District courts have discretion in deciding whether and how to provide "timely, accurate, and informative" notice to prospective plaintiffs. *Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).

The FLSA permits employees to maintain an action on behalf of themselves and others similarly situated, provided that the similarly situated employees only become plaintiffs if they opt-in to the litigation in writing. 29 U.S.C. § 216(b); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), overruled on other grounds by *Desert Palace v. Costa*, 539 U.S. 90 (2003). To determine whether to certify a collective action and thus send notice of the suit to potential opt-in

plaintiffs, the majority of federal courts follow the two-step approach developed in *Lusardi v. Xerox Corporation*, 118 F.R.D. 351 (D.N.J. 1987). *See Mooney*, 54 F.3d at 1213-14. "Under *Lusardi*, the trial court approaches the 'similarly situated' inquiry via a two-step analysis." *Mooney*, 54 F.3d at 1213. The first step occurs at the notice stage. *Id*.

The two stages of the *Lusardi* approach are the "notice stage" and the"decertification stage." *Mooney*, 54 F.3d at 1216. The first *Lusardi* step is to decide whether to issue notice to potential class members. *See id.* at 1213–14. At the notice stage, the district court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc*., 600 F.3d 516, 519 (5th Cir.2010). The court's decision at this stage is often based only on the pleadings and any affidavits that have been submitted. *Id*. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Mooney*, 54 F.3d at 1214. However, even this lenient standard requires substantial allegations that potential members "were together the victims of a single decision, policy, or plan...." *See id.* at 1214 n. 8.

6

At the notice stage the plaintiff "bears the burden of making a preliminary factual showing that other similarly situated individuals exist such that the court should provide notice of the action to putative class members." *White v. Integrated Electronic Technologies, Inc.*, 2013 WL 2903070, at *3 (E.D.La. June 13, 2012). Generally courts require only a minimal showing that (1) there is a reasonable basis for the plaintiff's allegations, (2) that the aggrieved putative class members are similarly situated with regard to the claims and defenses asserted, and (3) that these individuals desire to opt-in to the suit. *Walker v. Honghua America, LLC*, 870 F.Supp.2d 462, 465-66 (S.D.Tex.2012) (citing *Aguirre v. SBC Communications, Inc. ("Aguirre I")*, 2006 WL 964554, *5 (S.D.Tex. Apr. 11, 2006). Some courts do not require the third element, which is not mentioned in § 216(b).

Due to the limited evidence available at this stage of the litigation, courts usually employ a "fairly lenient standard" that typically results in conditional certification of a representative class. *Mooney*, 54 F.3d at 1214. *See also Stiles*, 2010 WL 935469 at *2. Yet, "[w]hile the standard at this stage is not particularly stringent, it is by no means automatic." *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1213 (11th Cir. 2001)). As a practical matter, most district courts in this Circuit "require some factual basis to the plaintiff's allegations that a collective

actions is warranted before granting notice and conditional certification." *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, at * 4 (S.D. Tex. Jan. 24, 2007).

## *IV. Analysis*

Plaintiff contends that this case centers on Legend USA's calculation of overtime premiums. In particular, he contends that Defendant calculated his overtime premium based only on the $24/ hour base rate and did not include the $20/hour site bonus in the time-and-a-half overtime calculation. Legend USA argues that the "set-site bonus," is a bonus as defined by 29 U.S.C. 207(e) and is not a "regular rate" entitled to overtime.

The FLSA requires that any hours worked over 40 in a workweek must be paid "at a rate not less than one and one-half times the regular rate at which [the worker] is employed." 29 U.S.C. § 207(a). The term "regular rate" is defined in Section 7(e) of the FLSA and "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," subject to eight statutory exceptions. 29 U.S.C. § 207(e). Those exceptions are, broadly speaking:

1. Holiday gifts or bonuses;

2. Vacation or holiday pay, or reimbursement of expenses incurred by the employee;

3. Bonuses which are discretionary both as to their existence and their amount;

4. Employer contributions to retirement plans or other employee benefit plans;

5. Premium rates paid for working past eight hours in a day;

6. Premium rates paid for weekend or holiday work;

7. Premium rates paid pursuant to a collective bargaining agreement; and

8. Payments related to employee stock plans.

29 U.S.C. § 7(e)(1)-(8); *see generally* 29 C.F.R., Part 778, Subpart C.

Plaintiff contends that the "site bonus" does not fit into any of the above statutory exemptions, and therefore, Legend USA's failure to include it in the employee's regular rate is in violation of the FLSA. Plaintiff states that as the employer, Legend USA bears the burden of demonstrating that certain payments should not be included in determining its employees' regular rate. *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2008) (citing *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966)). He argues that the Code of Federal Regulations explicitly warns against "[a]rtificially labeling part of the regular wages a 'bonus,'" and states that "the term [bonus] is improperly applied if it is used to designate a portion of regular wages which the employee is entitled to receive under his regular wage contract." 29 C.F.R. § 778.502(a). Ultimately, he contends that the exclusion of the site bonus from the overtime calculations results

in "[p]ayment for overtime on the basis of an artificial 'regular' rate" which is not in compliance with the overtime provisions of the Act. 29 C.F.R. § 778.500.

Legend USA contends that "a 'set-site' bonus" is done on a production basis for an amount of work actually performed, and does not include work not performed, such as hours obtained for training, and other non-performance based incentive." It asserts that Plaintiff fails to meet his burden to establish that a class should be conditionally certified and notice authorized because he has failed to identify any other potential plaintiffs and failed to obtain affidavits from any potential plaintiffs, and continues in failing to demonstrate any evidence of a widespread discriminatory plan.

The Court disagrees. Plaintiff's allegations have satisfied the critical factor of whether a common policy exists. Through discovery, Plaintiff has presented a company-wide policy of Legend USA's method of calculating the remuneration of all its workers. The Court notes that the Corporate Policy states that it relies on the Employment Standards Act, an Act of the Legislature of Ontario which regulates employment in the province, "including wages, maximum work hours, and workplace health and safety." Wikipedia, https://www.en.wikipedia.org/wiki/Employment_Standards_Act (Last visited August 27, 2018). The FLSA allows a plaintiff to bring a collective action on behalf of "similarly situated" employees, but

the statute does not define the phrase, "similarly situated." Although "similarly situated" is not defined under the FLSA, courts have found that for conditional certification "putative class members need only show that they were affected by a common policy, plan, pattern or practice." *McKnight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 803 (S.D.Tex.2010). Further, "it is enough for the plaintiff to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually intend to join the lawsuit." *White v. Integrated Elec. Techs., Inc.*, 2013 WL 2903070, at *7 (E.D. La. June 13, 2013).

Based on the foregoing, it appears that the Corporate Policy applies to all employees of Legend USA, effectively making it company-wide. Where "there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate." *McCloud v. McClinton Energy Grp., L.L.C.*, 2015 WL 737024, at *8 (W.D. Tex. Feb. 20, 2015); *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (where "actions or policies were effectuated on a company-wide basis, notice may be sent to all similarly situated persons on a company-wide basis"); *Donohue v. Francis Servs., Inc.*, 2004 WL 1161366, at *2 (E.D. La., May 24, 2004) ("collective action certification is not

precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations").

Defendant opposes Plaintiff's proposed notice and method of providing notice as overly broad. They argue that Plaintiff's request for notice to all employees within the United States would encompass a multitude of job types, at all of Defendant's United States locations. They further argue that such notice would include a great number of employees in different job positions (some in salt mines some in office buildings), with different hours, duties and pay—"[s]ome exempt, some non-exempt." They maintain that these employees would not be "similarly situated."

A broad geographic scope or numerous locations is not enough to defeat certification across locations. *See Donohue v. Francis Servs., Inc.*, 2004 WL 1406080 (E.D.La. June 22, 2004) (holding that employers should not be able to "escape FLSA liability by making sure to underpay vast numbers" of their employees and then claim that the class definition is too broad). If there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate. *Vargas v. Richardson Trident Co.*, 2010 WL 730155, at *6 (S.D.Tex. Feb.22, 2010); *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 539–40 (S.D.Tex.2008) (certifying a class even though they were

store managers working in various locations under supervision of different individuals because there was evidence of a common policy).

Here, Plaintiff has produced a company-wide Policy which defines the "Remuneration" of all employees paid a "Base rate" and receiving a "Site Bonus." Further, Legend USA admits that "payment for a site bonus is not included in the regular rate of pay when calculating overtime." *R. 23-2, No.10*. In other words, Legend USA "employs a "top-down, centralized policy regarding overtime … throughout the organization." *Wilson v. Navika Capital Group, LLC*, 2014 WL 223211, at *12 (S.D.Tex., 2014). Such evidence places these employees in the same situation as Plaintiff as to whether or not they were eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207, and did not receive full overtime compensation.

The Court finds it necessary to allow discovery based on Plaintiff's proposed class definition. If the alleged illegal pay scheme does exist, discovery based on Plaintiff's proposed class definition will uncover the extent and depth of such a scheme—i.e., whether Legend USA engaged in any violations of the FLSA with regard to its "Site Bonus." While the Court recognizes Defendants' concerns, the Court again notes the lenient standard applied at this "notice stage." At the "notice stage, 'courts appear to require nothing more than substantial allegations that the

putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney*, 54 F.3d at 1214 n. 8 (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). Thus, the Court finds that at this stage conditional certification is appropriate. Defendants may later file a motion for decertification after a more extensive discovery process has been conducted, if it is determined at that stage that Plaintiff has failed to carry his burden of establishing that he and members of the proposed class are similarly situated.

Defendants object to the content of Plaintiff's proposed Notice. Section 216(b) imparts the district court with discretionary authority to facilitate notice to potential plaintiffs. *Lima*, 493 F. Supp. 2d at 800 (citing *Hoffmann-La Roche Inc.* at 169). When considering the content of the notice, courts often find that these issues are best resolved by mutual agreement of the parties. *See, e.g., Banegas v. Calmar Corp.*, 2015 WL 4730734, at *6 (E.D.La.,2015); *Perkins v. Manson Gulf, L.L.C.*, 2015 WL 771531, at *5 (E.D.La.,2015). Accordingly, the parties are directed to meet and confer regarding the proposed notice and attempt to resolve these disputes in good faith as ordered below.

As to Defendants objection to Plaintiff's request that the Notice be posted in all of Legend USA's locations, the Court agrees with Plaintiff that such posting is "an efficient, cost effective method to notify potential opt-in distributors of this

class action and would not be burdensome on Defendants." *See Coyle v. Flowers Foods Incorporated*, 2016 WL 4529872, at *7 (D.Ariz., 2016) ("Posting Notices at the warehouses is a cost-efficient way to notify potential opt-in plaintiffs of the action and places no burden on Defendants").

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Conditionally Certify FLSA Collective Action [Rec. Doc. 13] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants shall have fourteen (14) days from the entry of this Court's Order to provide Plaintiff with a computer-readable database that includes the names of all potential members of the FLSA Collective Class, along with their current or last known mailing address, email address, telephone number, and social security number.

**IT IS FURTHER ORDERED** that the parties meet, confer, and thereafter submit to the Court a joint proposal of Notice no later than twenty-one (21) days from the entry of this Court's Order. If the parties are unable to agree on the proposed notice, the parties shall file the appropriate motion(s) with their objections within seven (7) days.

**IT IS FURTHER ORDERED** that potential class members may opt in to this collective action if: (1) they have mailed their consent form to counsel for the class within sixty (60) days after the notice and consent forms have been mailed out to the class; or (2) they show good cause for any delay.

**THUS DONE AND SIGNED** in Lafayette, Louisiana, this 11th day of September, 2018.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE