## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANIEL KAESEMEYER, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 17-01520 |
| | ) | |
| v. | ) | HON. ROBERT R. SUMMERHAYS |
| | ) | MAG. JUDGE WHITEHURST |
| LEGEND MINING USA, INC., and | ) | |
| LEGEND MINING, INC. | ) | COLLECTIVE ACTION |
| | ) | |
| Defendant. | ) | |

## JOINT MOTION TO ACCEPT SETTLEMENT

Plaintiff DANIEL KAESEMEYER, on his own behalf and on behalf of the members of the collective, and Defendants LEGEND MINING USA, INC. and LEGEND MINING, INC., (collectively, "Legend Mining" or "Defendants") hereby jointly file this motion with respect to the settlement and dismissal of these claims. As set forth below, the Parties submit that the settlement is a fair and reasonable resolution of *bona fide* disputes among the Parties, and settlement should be approved.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Legend Mining, Inc. is a Canadian corporation involved in the mining industry. Legend Mining USA, Inc. is a Nevada corporation that acts as its American subsidiary.[1] Defendants allege that Legend Mining USA, Inc. is the true employer in this case, and that Legend Mining, Inc. was not a proper party to this suit.

In 2017, Defendants began a project at the Weeks Island salt mine located in Iberia Parish, Louisiana. (Complaint, Dkt. #1, ¶ 13). Plaintiff Kaesemeyer, and the other members

---

[1] At some point after this lawsuit was filed, Legend Mining USA, Inc. ceased operations, and the corporation has been formally dissolved.

of the collective, accepted offers of employment to work on this project.

At issue in this case is the Defendants' method of paying overtime. Defendants paid the Plaintiffs a "regular hourly rate" plus an hourly "set site bonus." (Dkt. #1, ¶ 14). Overtime pay was calculated solely on the "regular hourly rate" and did not take into account the "set site bonus." (*Id.*, ¶ 14-15). Plaintiffs contended that this violated the Fair Labor Standards Act's regular rate regulations, *see* 29 C.F.R. § 778.108 *et seq.*, insofar as all overtime payments should have included the set site bonus in the time-and-a-half calculation. Defendants contended that the bonus was excludable from the regular rate, *see, e.g.*, 29 C.F.R. § 778.208 *et seq.* (listing those bonuses and payments that may be excluded from the regular rate).

The Complaint, as initially filed, also included a claim that Defendants had failed to pay Mr. Kaesemeyer his paycheck. (*See* Dkt. #1, ¶¶ 19-22). However, immediately after this lawsuit was filed, Defendants tendered Mr. Kaesemeyer the unpaid wages in full, and the only remaining disputed issue related to the overtime pay.

On January 17, 2018, Plaintiffs moved for conditional certification. (Dkt. #10). Certification was initially denied. (Dkt. #18). The parties exchanged written discovery, and Plaintiff filed a renewed motion to certify, which was granted. (Dkt. #39). Court-authorized notice was sent to the class, and ten additional Plaintiffs joined this action during the opt-in period. (Dkt. #43). Two additional Plaintiffs filed untimely opt-in forms, and were granted permission to join the case over Defendants' objection. (Dkt. #45).

The Parties then exchanged written discovery, which included production of all pay and time records for the Plaintiffs in this action. After weeks of negotiation, the Parties ultimately agreed on a settlement which provided each Plaintiff with 100% of the unpaid overtime which he was allegedly owed, plus 25% of the potential liquidated damages penalties.[2] Settlement

---

[2] *See* 29 U.S.C. § 260 (providing for award of liquidated damages to successful FLSA claimants, subject to a "good faith" defense by the Defendant).

was reached in April 2019. Individual Settlement Agreement and Releases were issued to each Plaintiff. Each Plaintiff signed his respective release, returned the release, and Defendants issued payments in accordance with the Agreement. The Plaintiffs have all since received and negotiated their checks.

## LEGAL STANDARD

At the outset, the Parties contend that under Fifth Circuit law, no formal settlement approval order is necessary to effectuate this settlement. The Fifth Circuit has held that in FLSA cases where parties, both represented by counsel, reach "a settlement of a bona fide dispute, which [the workers] accepted and were compensated for," court approval of the settlement is not necessary. *Martin v. Spring Break '83 Prod.*, 688 F. 3d 247, 257 (5th Cir. 2012).[3] Nevertheless, this memorandum has been filed at the Court's request.

With respect to court approval of FLSA settlements, the Eleventh Circuit has held:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the Parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.[4]

Here, the primary claim revolves around the calculation of the "regular rate," and whether the Defendants correctly calculated overtime by excluding certain site bonuses from

---

[3] *See Steele v. Staffmark Inv., LLC*, 172 F. Supp. 3d 1024, 1028 (W.D. Tenn. 2016) (Recognizing that "The Fifth Circuit… held that there is no need for court-approval of a privately-entered FLSA settlement.") (citing *Martin v. Spring Break 83, supra*).

[4] *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

that calculation. Importantly, there is a strong presumption in favor of judicial approval of a joint proposed settlement agreement in an FLSA action.[5] After a significant amount of discovery and disclosures, the Parties engaged in arm's-length negotiations to reach a proposed settlement agreement that reflects a reasonable compromise over the amount of disputed overtime wages.

A.    THE PROPOSED SETTLEMENT RESOLVES A BONA FIDE DISPUTE

On a motion to approve an FLSA settlement, "the Court must keep in mind the 'strong presumption' in favor of finding a settlement fair, and remain aware, as the parties must also be, that a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."[6] Although the court must evaluate the proposed settlement to ensure that there exists a *bona fide* dispute as to the plaintiffs' FLSA claims, this is a relatively light burden, as "the settlement hearing must not be turned into a trial or a rehearsal of the trial."[7]

Numerous matters are currently in dispute between the Parties, including whether the "set site bonus" was legally required to be included as part of the regular rate, whether it qualified as an excludable bonus pursuant to 29 C.F.R. § 778.208 *et seq.*, whether Defendant Legend Mining, Inc. qualified as an "employer" under the FLSA, and whether Defendants acted in "good faith" such that liquidated damages would not be awarded. The Parties recognize that these issues are disputed and would necessarily be decided via trial, and via a likely appeal.

The parties further recognize that settlement would be beneficial because, in absolute

---

5    *See Camp v. The Progressive Corp.*, 2004 U.S. Dist. LEXIS 19172, at *14-18 (E.D. La. September 23, 2004) (Wilkinson, J.) (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Quintanilla v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *6 (S.D. Tex. May 7, 2008) ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation.") (internal citations and references omitted).
6    *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008) (citations omitted).
7    *Id.* (citing *Brask v. Heartland Auto.*, 2006 U.S. Dist. LEXIS 62313 (D. Minn. Aug. 15, 2006)).

terms, the amount of money at issue here is relatively constrained. The temporal scope of the project was limited from fall of 2017 through early 2018, and several of the Plaintiffs (including named Plaintiff Kaesemeyer) did not work during the entire time period of the project. The allocation of settlement funds to opt-in Plaintiffs is based on each one's total compensation, which means that employees who worked throughout the project has received more money than those who worked just a few days.

Counsel for the Parties have vigorously represented the positions of their respective clients over these disputes. The parties have engaged in significant written discovery, including the production of all time and pay records for the members of the collective. There was also significant motion practice including an opposed motion for certification, which was first denied and later granted on rehearing, as well as a motion to file late opt in notices which was likewise disputed. Plaintiffs are also well aware of the potential difficulty in enforcing any ultimate judgment, as the primary assets of the Defendants are located in Canada. Settlement was reached after numerous back-and-forth telephone conferences and emails between counsel, and Plaintiff Kaesemeyer was actively involved as collective representative and personally approved the proposed settlement. Each side has substantial arguments in support of their factual and legal positions and they wish to enter into this settlement agreement to resolve and compromise these *bona fide* disputes without the need for a trial.

### B. THE PROPOSED SETTLEMENT IS THE PRODUCT OF ARMS-LENGTH NEGOTIATIONS THAT OCCURRED AFTER SUBSTANTIAL DISCOVERY

Courts also take into account whether the parties engaged in "extensive discovery [indicating] a good understanding of the strengths and weaknesses of their respective cases."[8] Although formal discovery is not always required prior to settlement, it weighs in favor of

---

8     *Black v. DMNO, LLC*, 2018 U.S. Dist. LEXIS 84739, at *7 (E.D. La. May 21, 2018) (*citing* Newberg On Class Actions § 13:50 (5th ed.))

settlement because "full discovery demonstrates that the parties have litigated the case in an adversarial manner and . . . therefore . . . settlement is not collusive but arms-length."[9] As recognized in *Collins v. Sanderson Farms*, "[t]he Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."[10]

As detailed above, the Parties have conducted formal discovery, independently investigated the facts and law throughout this action, and examined hundreds of pages of relevant company policies and wage and time records.  Further, counsel for the Plaintiffs and Defendants have analyzed the applicable law as applied to the facts discovered regarding the claims at issue, the defenses thereto, and the alleged damages. Counsel for the Parties only began settlement discussions <u>after</u> they possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation, including both written discovery.  Moreover, settlement was only reached after lengthy negotiations during which both sides made significant concessions from their original positions.  This factor therefore weighs in favor of approval.

### C. CONTINUED LITIGATION WOULD BE COSTLY, LONG, AND COMPLEX

The settlement agreement is also fair and reasonable because substantial obstacles exist if litigation continues, while the settlement provides immediate and certain relief.  The Parties disagree about the merits of the Plaintiff's claims, the viability of the Defendants' defenses, and the proper calculation of damages.  Without settlement, the Parties would have engaged in extensive additional discovery, including depositions of the Plaintiffs, as well as Defendants' managers and president.  Given that none of the opt-in Plaintiffs live permanently in Louisiana, and that Defendants' headquarters are based in Canada, these depositions would have been extremely time consuming and expensive.  The parties would

---

9     *Id.*
10     *Collins, supra,* 568 F. Supp. 2d at 725.

likely have filed dispositive motions on the merits of the claims and on the question of Defendant's good faith. The avoidance of "further costly litigation" weighs in favor of approving settlement.[11]

Counsel recognize the complexity and expense of trying an FLSA collective action, along with the uncertainty inherent in any trial. They have taken into account the time invested in this case and the uncertain outcome and risk of litigation. In negotiating the settlement, counsel had the benefit of broad, independently verified information regarding the Plaintiffs' claims, and have determined the settlement is in the best interest of both parties. Specifically, even if the Plaintiffs had prevailed on the merits, the Defendants would have likely appealed the judgment or verdict to the United States Fifth Circuit Court of Appeals. Under such a scenario, the Plaintiff and Opt-in Plaintiffs would not see any monetary relief from this case, if any, until years from now. Through this settlement, however, the Plaintiff and Opt-in Plaintiffs obtain immediate relief and benefit.[12]

### D. THE SETTLEMENT IS REASONABLE

After substantial discovery, motion practice, and investigation, all counsel agree that the proposed settlement represents a fair and reasonable compromise over the disputed issues that is in their clients' best interests. During litigation and settlement negotiations, the Plaintiffs and Defendants were vigorously represented by counsel experienced in FLSA litigation. The Plaintiff entered into the proposed settlement agreement voluntarily and represented that he knowingly and fully understood that he is relinquishing his claims in this matter in exchange for the agreed upon settlement.

Notably, the named Plaintiff and each Opt-In Plaintiff received **100%** of the overtime

---

11   *Smith v. Manhattan Mgmt. Co.*, 2016 U.S. Dist. LEXIS 30814, *4 (E.D. La. Mar. 10, 2016).

12   Obtaining "a certain and immediate recovery" weighs in favor of approving settlement. *Hall v. Prosource Techs., LLC*, 2016 U.S. Dist. LEXIS 53791, *23 (E.D.N.Y. Apr. 11, 2016).

payments to which he would have been entitled as a matter of law. In addition, they each received a 25% award of total maximum liquidated damages. Plaintiffs have thus been made whole, and have been made more than whole. Moreover, because the attorney's fee award was issued separately, Plaintiffs were not required to pay a percentage of their individual awards to their own attorneys. Given that Plaintiffs have received a <u>greater than 100%</u> recovery through this settlement, this factor weighs heavily in favor of granting approval.

Each Opt-in Plaintiff signed a consent form agreeing to be bound by any resolution of this matter, including any settlement agreed to by the parties. Each has also signed an individual settlement agreement and release, received his check, and negotiated that check. No Plaintiff objected at any point during the process; to the contrary, they were quite pleased. In short, the Parties agree that the terms of this settlement are reasonable, fair, and just, and settle all claims in this lawsuit.

### E. THE ATTORNEY'S FEES ARE REASONABLE

The FLSA mandates payment of attorney's fees and costs to prevailing plaintiffs.[13] Here, Plaintiffs' counsel was successful in certifying the collective, over Defendants' opposition, and obtaining relief for class members who otherwise would not have recovered or even been aware of their entitlement to relief. The parties' agreement provided for $9,408.75 in attorney's fees and costs. This reflects a significant voluntary reduction from the actual accrued attorney's fees in this case. Counsel also incurred $535.50 in recoverable costs, which are to be paid out of the same sum. Plaintiffs' counsel has willingly accepted a reduction of their earned fees in the interests of good faith compromise. And, as stated above, this was negotiated and paid separately, meaning that there was no percentage reduction for the Plaintiffs to pay the attorney's fees and costs. Accordingly, the Parties submit the requested

---

[13] 29 U.S.C. § 216(b); *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 700 (E.D. La. 2009).

award of attorney's fees and costs is reasonable.

## CONCLUSION

The Parties and their counsel agree that the settlement agreement is a reasonable compromise of the claims alleged by the Plaintiffs in light of the procedural posture of the case, the litigation risks, and the costs applicable to both sides. The Parties engaged in arm's-length settlement negotiations after discovery and months of litigation. Because the settlement agreement is a reasonable compromise of a *bona fide* dispute over unpaid overtime and wages, the Plaintiffs and Defendants jointly request that the Court grant approval of the settlement.

Respectfully Submitted,

    /s *Charles J. Stiegler*
Charles J. Stiegler, #33456 (TA)
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite 104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com

and

    s/ *Douglas R. Kraus*
Douglas R. Kraus, La. Bar No. 26668
Brener & Kraus, LLC
3640 Magazine Street
New Orleans, Louisiana 70115
Telephone: (504) 302-7802
dkraus@brenerlawfirm.com